

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ALK:AP/ML/BG                    *271 Cadman Plaza East*
F. #2020R01002                    *Brooklyn, New York 11201*


January 27, 2026


By ECF and E-Mail

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Herberth Rodríguez, et al.
               Criminal Docket No. 20-548 (WFK)

Dear Judge Kuntz:

       The government respectfully submits this supplemental motion <u>in</u> <u>limine</u> seeking to introduce at trial certain videos and photographs obtained from a cellphone belonging to defendant Elias Martínez Villanueva as direct evidence and, in the alternative, as Rule 404(b) evidence. As detailed further below, the videos and photographs that the government seeks to introduce include (1) images of Martínez Villanueva flashing 18th Street gang signs and/or wearing 18th Street colors; (2) an image of two armed 18th Street members flashing gang signs; and (3) prostitution advertisements. These images are direct evidence of the existence of the charged enterprise—the 18th Street gang; Martínez Villanueva's membership in the gang; and one the gang's purposes as alleged in the Indictment—namely, the promotion of prostitution. In the alternative, the images are admissible under Rule 404(b).

    I.      <u>Relevant Background</u>

       On April 21, 2022, a grand jury returned a second superseding indictment charging Martínez Villanueva with conspiracy to murder and murder in-aid-of racketeering for his involvement in the November 1, 2020 murder of Diego Vanegas Vásquez; possessing, brandishing and discharging a firearm during a crime of violence—i.e., the murder of Vanegas Vásquez; and causing the death of Vanegas Vásquez through the use of a firearm.[1] A warrant was issued for

---

      [1]      Co-defendant Herberth Rodríguez was also charged in the second superseding indictment with racketeering, in violation of 18 U.S.C. § 1962(c), which was predicated on: (1) narcotics distribution, in violation of 21 U.S.C. § 841(a)(1); (2) the attempted murder of John Doe-

Martínez Villanueva's arrest, but Martínez Villanueva evaded law enforcement for several years, until he was ultimately arrested on January 25, 2025.  The arresting officers recovered a cellphone from his person incident to arrest.  On March 21, 2025, the Honorable Lara K. Eshkenazi, United States Magistrate Judge, Eastern District of New York, authorized a search of the cellphone for evidence of violations of 18 U.S.C. § 1962(c) (racketeering), among other offenses.

Among the evidence found on the cellphone were: (1) multiple several-second videos of the defendant holding up gang signs signifying membership in 18th Street, including at various locations that appeared to be in and around New York City; (2) multiple several-second videos of the defendant wearing 18th Street colors in locations in New York City, such as on the Staten Island Ferry; (3) an image depicting two armed men holding 18th Street gang signs with the caption, "Eighteen Street Orale Carnal"; and (4) multiple photographs of nearly-naked women that appeared to be advertising prostitution, including with captions such as "💦 💦 💦 👄 🍊 🍊 🍊 👅 60$," "Open" and "Abierto," which means "open" in Spanish.  Metadata from the iPhone revealed that these images and videos were created on or about and between 2024 and 2025.

II.   The Images and Videos Are Admissible as Direct Evidence

As detailed above, Rodríguez is charged with racketeering and both Rodríguez and Martínez Villanueva are charged with violent crimes in-aid-of racketeering.   To prove racketeering, the government must prove, among other elements, the existence of an enterprise, that the enterprise had an effect on interstate commerce, that the defendant was associated with or employed by the enterprise.   Similarly, to prove violent crimes in-aid-of racketeering, the government must prove, among other things: (1) the existence of an enterprise engaged in or affecting interstate or foreign commerce; (2) that the enterprise was engaged in racketeering activity; (3) that the defendant had or was seeking a position in the enterprise; and (4) that the defendant's general purpose in committing the violent crime was to maintain or increase his position in the enterprise.  The above-described evidence should be admitted as direct evidence of 18th Street's existence and its racketeering activities, as well as Martínez Villanueva's association with the gang and motives for committing the charged violent crimes in-aid-of racketeering.

First, images of Martínez Villanueva holding up 18th Street gang signs at various locations within New York in recent years is relevant to proving the existence of the enterprise

---

1 on or about October 10, 2020, in violation of New York Penal Law ("NYPL") §§ 125.25(1), 110.00 and 20.00; and (3) conspiracy to murder and the murder of Vanegas Vásquez, in violation of NYPL §§ 125.25(1), 105.15 and 20.00.  The second superseding indictment also charged Rodríguez with conspiracy to distribute and possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B) and 841(b)(1)(D); conspiracy to murder and the murder of Vanegas Vásquez in-aid-of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 1959(a)(5); possessing, brandishing and discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); causing the death of Vanegas Vásquez through the use of a firearm, in violation of 18 U.S.C. § 924(j); possession of ammunition as an alien admitted under a nonimmigrant visa, in violation of 18 U.S.C. § 922(g)(5); and the attempted murder of John Doe-1 in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5).

itself and the defendant's association and loyalty to the gang, including his motive for committing the charged crimes. See, e.g., United States v. Pierce, 785 F.3d 832, 841 (2d Cir. 2015) (affirming admission of rap videos and tattoos as probative of association with the enterprise); United States v. White, No. 19-CR-3313, 2021 WL 3355166, at *3 (2d Cir. Aug. 3, 2021) (concluding there was sufficient evidence from which the jury could find the existence of the enterprise, including "photographs showing that MBG members had tattoos signifying their membership in MBG and affirmed their membership in MBG through posts on social media"); United States v. Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *21 (E.D.N.Y. Jan. 20, 2023) ("[O]ther E.A.M. members' discussions regarding E.A.M.; their own affiliations with the E.A.M. enterprise; and in particular their knowledge of and affiliation with [the defendant], clearly have significant probative value in proving the existence of E.A.M. itself and of [the defendant's] association with the enterprise."). Put simply, not only does this constitute evidence of the gang's existence generally, but it specifically demonstrates that the defendant continued to associate with the gang and actively promoted his membership in and loyalty to the gang after the charged conduct. Additionally, an image of other armed 18th Street members in the defendant's own phone further establishes the existence of the enterprise.

Second, the advertisements of women for sex are highly probative of (i) the defendant's participation in the affairs of 18th Street; and (ii) certain alleged purposes of 18th Street (i.e., enrichment through the promotion of prostitution) and means and methods of 18th Street (i.e., promoting prostitution as a means of obtaining money). See Ind. ¶¶ 6(d), 7(c); see also United States v. Basciano, 599 F.3d 184, 207 (2d Cir. 2010) (internal quotations and citation omitted) (finding that evidence of racketeering activity "can constitute some evidence of the nature of the enterprise, which, in turn, can prove the relatedness and continuity essential to a pattern, thereby helping to establish that the defendant's own acts constitute a pattern within the meaning of RICO."); United States v. Pizzonia, 577 F.3d 455, 465 (2d Cir. 2009) ("Although no [fewer] than two predicate acts must be committed . . . to demonstrate a pattern of racketeering, in the end, it is not the number of predicates proved but, rather, the relationship that they bear to each other or to some external organizing principle that indicates whether they manifest the continuity required to prove a pattern."). As detailed above, the photographs depict nearly-nude women in sexually provocative positions with captions such as "open" and "abierto" to suggest that the women were available for sexual services. Other captions on the photographs included sexually-suggestive emojis followed by a price (i.e., $60). Though these photographs appear to be created after the time period alleged in the Indictment, that the defendant remained in 18th Street and continued to participate in the promotion of prostitution is highly probative of the pattern of racketeering activity alleged in the indictment and the defendant's efforts in furtherance of that activity.

III.     In the Alternative, the Proffered Evidence is Admissible as Rule 404(b) Evidence

A.     Applicable Law

Evidence of uncharged crimes and other acts may be admitted pursuant to Rule 404(b) for numerous permissible purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Fed. R. Evid. 404(b)(2). The Second Circuit has repeatedly held that evidence of uncharged crimes may be admitted at trial

under Rule 404(b) to establish the existence and development of a criminal relationship between co-conspirators.  See, e.g., United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000) (upholding admission of evidence of defendant's prior criminal activities with co-conspirators in charged drug conspiracy as relevant "to inform jury of the background of the charged conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed").  Other acts evidence is also admissible under Rule 404(b) to "corroborate crucial prosecution testimony" if the corroboration is "direct and the matter corroborated is significant."  United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987) (internal quotation marks omitted).

Finally, acts that occurred after the charged conduct are also admissible under Rule 404(b).  See, e.g., United States v. Goffer, 721 F.3d 113, 124 (2d Cir. 2013) ("Subsequent acts are frequently probative as to intent"); United States v. Kelley, 551 F.3d 171, 175-76 (2d Cir. 2009) (finding that fraudulent account statements sent by the defendant to his clients two to four years after the charged securities violations were relevant to defendant's intent at the time of the charged violations); United States v. Rutkoske, 506 F.3d 170, 178 (2d Cir. 2007) (affirming the introduction of conversations under Rule 404(b) "notwithstanding the fact that they took place four years after the charged conspiracy" given the similarity between the charged and subsequent conduct, and noting that the Second Circuit "has refused to erect a per se bar to evidence of 'other acts' occurring after the charged offense"); United States v. Germosen, 139 F.3d 120, 128 (2d Cir. 1998) (allowing evidence of similar fraud scheme perpetrated months after the charged offense under Rule 404(b) to show the defendant's intent and knowledge in committing the charged offenses, and providing that "[t]he fact that the evidence involved a subsequent rather than prior act is of no moment."); United States v. Ramirez, 894 F.2d 565, 569 (2d Cir. 1990) ("Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility.").

> B.      Discussion

For the reasons largely set forth above, evidence of the proffered evidence is admissible pursuant to Rule 404(b) for numerous permissible purposes—i.e., identity (the defendant's membership in 18th Street); knowledge, intent and motive (the defendant's active involvement in the promotion of prostitution on behalf of the gang).

Moreover, this evidence corroborates crucial prosecution testimony about the existence of the 18th Street gang and the defendants' membership and association with the gang, including in promoting prostitution.  The government expects that one or more cooperating witnesses will testify that members of 18th Street actively promoted prostitution within the gang's territory in Jackson Heights, Queens, to make money for themselves and the gang.  For instance, 18th Street members solicited clients along Roosevelt Avenue by calling out the word "chica" to passersby and escorting potential clients to brothels run by individuals who paid "rent" money (i.e., demands for payment through threats or coercion) to the gang as a condition of operating in 18th Street territory.  Photographs of the defendant repping the gang in various locations throughout New York City and promoting prostitution in recent years establishes that, while he may have gone under the radar of law enforcement, he remained in New York City and involved with 18th Street, and the broader gang also remained involved in the promotion of prostitution.

Finally, the proffered evidence survives a Rule 403 analysis because it does "not involve conduct any more sensational or disturbing" than the offenses charged—including the exceptionally violent murder of Vanegas Vásquez as he sat in the backseat of a taxi.  See United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992); accord United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (evidence of uncharged acts not unfairly prejudicial when it does not involve conduct "more inflammatory than the charged crime").  Further, given that the government will admit evidence of the gang's and defendants' promotion of prostitution during the charged time period, there is no risk of unfair prejudice by admitting evidence of the same conduct subsequent to the return of the indictment.

IV.    Conclusion

For the foregoing reasons, the Court should grant the government's supplemental motion in limine.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ _____
Andy Palacio
Megan Larkin
Brachah Goykadosh
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (WFK) (by ECF)
Defense Counsel (by ECF)